IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RAYMOND BENDIXEN, II,                          )
                                               )
                    Plaintiff,                 )
                                               )        CIVIL ACTION
v.                                             )
                                               )        No. 15-9146-JWL
CAROLYN W. COLVIN,                             )
Acting Commissioner of Social Security,        )
                                               )
                    Defendant.                 )
_____        )

MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security

(hereinafter Commissioner) denying Disability Insurance benefits (DIB) and

Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and

1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and

1382c(a)(3)(A) (hereinafter the Act).  Finding no error in the final decision of the

Commissioner, the court ORDERS that judgment shall be entered pursuant to the fourth

sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

I.      Background

Plaintiff applied for DIB and SSI benefits, alleging disability beginning January 1,

2008.  (R. 16, 168, 170).  At the hearing, counsel made a motion and Plaintiff agreed to

amend his alleged onset date to March 1, 2012.  (R. 34-35).  Plaintiff exhausted

proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. Plaintiff argues that the Administrative Law Judge (ALJ) erred in evaluating the medical opinion of his treating physician, Dr. Willhite and in evaluating the credibility of his allegations of symptoms, and that as a consequence the step five determination that he can perform work existing in the national economy is not supported by the record evidence.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the

2

determination whether substantial evidence supports the Commissioner's decision is not

simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v.

Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a

claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136,

1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).

"If a determination can be made at any of the steps that a claimant is or is not disabled,

evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting

Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether

claimant has engaged in substantial gainful activity since the alleged onset, whether he

has a severe impairment(s), and whether the severity of his impairment(s) meets or equals

the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt.

P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner

assesses claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e),

416.920(e).  This assessment is used at both step four and step five of the sequential

evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process--

determining at step four whether, in light of the RFC assessed, claimant can perform his

past relevant work; and at step five whether, when also considering the vocational factors

of age, education, and work experience, claimant is able to perform other work in the

3

economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one

through four the burden is on Plaintiff to prove a disability that prevents performance of

past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord,

Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.

At step five, the burden shifts to the Commissioner to show that there are jobs in the

economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084,

1088 (10th Cir. 1999).

        The court finds no error in the decision below.

## II.      Dr. Willhite's[1] Opinion

        Plaintiff claims the ALJ erred in evaluating Dr. Willhite's medical opinions

because she provided inadequate reasons for discounting the opinions and because the

decision does not make clear that she evaluated the regulatory factors for weighing

medical opinions.  The Commissioner urges on the other hand that the ALJ reasonably

discounted the opinions based on rationale supported by the record evidence, and

adequately addressed the regulatory factors to make clear "the weight the adjudicator

gave to the treating source's medical opinion[s] and the reasons for that weight."

_____

        [1]In the decision, the ALJ refers to Plaintiff's treating physician as "Dr. Andrea
Willate."  (R. 22).  The court finds that the physician to which the ALJ refers is Dr.
Willhite.  The ALJ cites Exhibits 3F and 10F (Dr. Willhite's opinions) as the opinions to
which she refers, those opinions are not entirely legible, and the second opinion (Ex. 10F)
was identified in counsel's cover letter as a "Residual Functional Capacity Questionnaire
- Andrea K Willate."  (R. 524).  And, Plaintiff does not allege error in this regard.

(Comm'r Br. 8) (quoting <u>Oldham v. Astrue</u>, 509 F.3d 1254, 1258 (10th Cir. 2007)).  The court agrees with the Commissioner.

### A.    The ALJ's Evaluation

The ALJ discussed Dr. Willhite's opinions and recognized that if accepted they limited Plaintiff "to less than the full range of sedentary work."  (R. 22).  She discounted the opinions because recent examinations revealed a full range of motion of Plaintiff's spine and because there was not "longitudinal evidence" of impairment in motor and sensory functioning.  <u>Id.</u>  She acknowledged a history of kidney stones, but found that since Plaintiff's amended alleged onset date (March 1, 2012) the record does not show active treatment for kidney stones beyond "abdominal tenderness (a subjective finding)" on examination.  <u>Id.</u>  Finally she noted that although Plaintiff is obese, the record does not show chronic difficulty breathing, cardiovascular involvement, or impaired gait or station. <u>Id.</u>

### B.    Standard for Evaluating a Treating Source Opinion

A treating physician's opinion about the nature and severity of a claimant's impairments should be given controlling weight by the Commissioner if it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.  <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300-01 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  When a treating physician's opinion is not given controlling weight, the ALJ must nonetheless specify

what lesser weight she assigned that opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).

A treating source opinion which is not entitled to controlling weight is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." Watkins, 350 F.3d at 1300. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. §§ 404.1527(c)(2-6), 416.927(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)). However, the court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham, 509 F.3d at 1258 (quoting Watkins, 350 F.3d at 1300). After considering the factors, the ALJ must give good reasons in her decision for the weight she ultimately assigns the opinion. If the ALJ rejects the opinion she must give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

## C.      Discussion

Plaintiff's argument that "the ALJ did not state the weight she was giving Dr.

Willhite's opinion" (Pl. Br. 15), while technically correct is of little significance since it is

clear that the ALJ gave little weight to Dr. Willhite's opinions.  Plaintiff's argument that

"the ALJ wrongfully determined that Plaintiff had not sought treatment for kidney stones

after the amended alleged onset date," id., takes the ALJ's rationale out of context, as

suggested by the Commissioner.  The ALJ thoroughly considered and discussed

Plaintiff's history of treatment for kidney stones:

> The claimant alleges disability due to recurring kidney stones.  With respect
> to such, the record documents a long history since at least calendar year
> 2007 of multiple kidney stones requiring stenting from December 2009
> until February 2010, and repeat lithotripsy (See, Exhibit lF; Exhibit 2F, Pgs.
> 6-45).  However, the record was silent between November 2011 and March
> 2013.  The undersigned notes that a failure to seek treatment, particularly
> during a claimed disability, tends to suggest either no or tolerable
> symptomatology.  On March 21, 2013, the record documents that the
> claimant presented through the emergency department of the Labette Health
> Hospital with complaint of severe right flank pain with radiation to the back
> (See, Exhibit 8F, Pgs. 38-51).  In relation to such complaints, testing
> conducted of the claimant's abdomen and pelvis is noted to have
> demonstrated multiple bilateral stable non-obstructing stones in both
> kidneys (measuring up to 5 millimeters on the left and up to 15 millimeters
> on the right) but no evidence for hydronephrosis (See, Exhibit 8F, Pgs. 20
> and 32).  The undersigned notes that the claimant has reported he passed
> one of these stones on March 24, 2013 (See, Exhibit 8F, Pgs. 23- 37),
> though the record indicates him to have persisted with report of flank pain
> thereafter through April 2013 (See, Exhibit 8F, Pgs. 2-22).  The
> undersigned notes that clinical examinations conducted in relation to such
> pain complaints evidenced abdominal tenderness (a subjective finding), but
> were otherwise normal.  Moreover, the record fails to evidence pursuit by
> the claimant of flank pain outside of this limited two month period.
> However, the longevity of the calcific buildup in the claimant's kidneys
> does account for some abdominal discomfort that would reasonably impact

the claimant's ability to lift or carry heavy weights or perhaps walk long distances.

(R. 20-21). Thus, the ALJ recognized that Plaintiff had a long history of kidney stones. But, she also noted a fifteen-month period of no treatment between November 2011 and March 2013, and that after Plaintiff's alleged date of onset he was only treated for kidney stones in March and April 2013, these stones were characterized as nonobstructing stones, and the only indication of symptomology was Plaintiff's subjective report of pain. The point of the ALJ's discussion as to Dr. Willhite's opinions was that such a slim and intermittent record might account for certain limitations, but it would not justify the limitations opined by Dr. Willhite, certainly not as permanent limitations.

To a similar effect is Plaintiff's next argument, alleging error in finding a full range of motion in Plaintiff's spine. Plaintiff argues that the ability to perform a full range of motion while in pain "should not be a basis to discount Dr. Willhite's opinion." (Pl. Br. 15-16). However, the presence of pain when working is not in itself a basis to award disability benefits, and as the ALJ noted the fact that more recent examinations found a full range of motion is at least some evidence that Plaintiff does not have the functional limitations opined by Dr. Willhite. Plaintiff's final argument, that he doesn't have a joint in his left thumb, does not negate the ALJ's finding that there is no longitudinal evidence of impairment in motor and sensory functioning. The question is not whether Plaintiff has physical abnormalities. Rather, it is whether those abnormalities cause significant functional limitations in ability to work. Plaintiff points to

abnormalities but he does not point to record evidence of functional limitations supporting the limitations opined by Dr. Willhite.

Plaintiff also argues that the ALJ did not evaluate the regulatory factors for weighing medical opinions, and points to record evidence which in his view supports Dr. Willhite's opinions. He suggests that an MRI in March 2012 supports the opinions, and that his repeated treatment for back and knee pain and for kidney stones, and his treatment history with Dr. Willhite, with office visits every three months between June 2010 and July 2013, should lead the ALJ to accord greater weight to her opinions. He argues, "She opined to limitations and based on her qualifications and treatment relationship, her opinions should not have been so readily discounted by the ALJ." (Pl. Br. 18).

This argument is in essence an argument for the court to reweigh this evidence, accord it greater weight than did the ALJ, and substitute its judgment for that of the ALJ. As noted above, it is forbidden to do so. <u>Bowman</u>, 511 F.3d at 1272; <u>Hackett</u>, 395 F.3d at 1172. All of the evidence cited by Plaintiff was considered and discussed by the ALJ. The fact that she did not accord it the weight of which Plaintiff believes it is worthy is of no moment because the evidence does not conclusively demonstrate the limitations opined by Dr. Willhite. Rather, it suggests merely that the ALJ <u>could have</u> accorded greater weight to the opinions. She did not, and as noted above the reasons she gave for discounting Dr. Willhite's opinion are supported by the record evidence. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an

administrative agency's findings from being supported by substantial evidence. [The court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

## III.   Credibility

Plaintiff next claims the ALJ erred in her credibility determination because she mischaracterized Plaintiff's testimony regarding care for his stepson and other daily activities and failed to look to the other credibility factors such as Plaintiff's willingness to undergo epidural steroid treatments and his persistence in seeking treatment.  He argues that instead of "focusing on the limited activities of daily living that Plaintiff testified to being able to perform, the ALJ should have looked to the credibility factors." (Pl. Br. 20).  The Commissioner argues that the ALJ properly considered the evidence as it relates to credibility and the ALJ's determination is supported by the record evidence. She argues that Plaintiff himself mischaracterized the decision and the evidence.

### A.      Standard for Evaluating the Credibility of a Claimant's Allegations

The framework for a proper credibility analysis is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).  An ALJ must consider (1) whether the claimant has established a symptom-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both

objective and subjective, the claimant's symptoms are in fact disabling.  See, Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (explaining the Luna framework).  The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating credibility:  Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.  20 C.F.R. § 404.1529(c)(3)(i-vii).  The court has also recognized a non-exhaustive list of factors which overlap and expand upon those promulgated by the Commissioner.  Luna, 834 F.2d at 165-66.  They include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).

The court's review of an ALJ's credibility determination is deferential.  Such determinations are generally treated as binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).  "[They] are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.  Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at

1173.  Moreover, <u>Kepler</u> does not require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of <u>Kepler</u> are satisfied.  <u>Qualls v. Apfel</u>, 206 F.3d 1368, 1372 (10th Cir. 2000).

### B.   Analysis

Once again, Plaintiff argues that the ALJ focused on the wrong factors, and seeks to have the court reweigh the credibility factors and substitute its judgment for that of the ALJ.  Moreover, he misses evidence related to credibility which the ALJ discussed in her decision.  To be sure, the ALJ accorded weight to Plaintiff's "acknowledgment of continued ability to engage in a variety of activities," as a factor in her determination that Plaintiff's allegations of symptoms "are not entirely credible."  (R. 21).  But, as the Commissioner points out and as discussed above, the ALJ also noted that recent physical examinations revealed full range of motion in the spine, and even during flares of pain Plaintiff demonstrated normal strength and sensation; no instability, atrophy, or deformity; and normal gait, station, and posture.  (R. 20) (citing Ex. 9F/3 (R. 497) and Ex. 11F/27 (R. 553); <u>see also</u> (R. 337-38, 486-87)).  And, the ALJ noted the evidence regarding kidney stones revealed only two flares between November 2011 and the hearing, and the only evidence of limitation was Plaintiff's subjective report.  (R. 20-21).

Plaintiff argues that the ALJ mischaracterized the record when he relied on Plaintiff's assistance in the caretaking of his adult stepson to discount Plaintiff's allegations.  (Pl. Br. 19).  He argues this is so because he testified that if his stepson falls,

12

he cannot help him get up and he has to call someone to help.  Id. (citing R. 41).  While it is true that Plaintiff testified that he cannot help his stepson get up if he falls, the ALJ is not required to accept all of Plaintiff's testimony when he is evaluating the credibility of Plaintiff's allegations.  Were it otherwise, there would be no reason for a credibility determination.  Moreover, Plaintiff ignores the ALJ's finding that Plaintiff drove out of state weekly to Lincoln, Nebraska to take his stepson to therapy.  That finding is supported by record evidence (R. 419), and such caregiving responsibility tends to discount testimony that Plaintiff is not able even to help his stepson get up.

Similarly, Plaintiff argues that the ALJ erred in finding that he prepares meals, cleans bathrooms, and does laundry, because he testified that he takes breaks while preparing meals, that he is able to clean up his own messes in the bathroom, and that he does not do laundry.  (Pl. Br. 20) (citing R. 39-40).  As discussed above, the ALJ need not credit every limitation to which a claimant testifies when she is evaluating the claimant's credibility.  As the ALJ noted, despite qualifying his responses Plaintiff testified affirmatively when asked if he prepared meals or cleaned bathrooms.  (R. 39-40).  Earlier, when completing a function report Plaintiff stated that he prepares "complete meals."  (R. 193).  And in the same function report, Plaintiff stated that he "help[s] with laundry."  Id. The fact that Plaintiff provided conflicting testimony in this regard is but one more reason to discount the credibility of his allegations.  While it is true that the record contains some evidence from which the ALJ might have found Plaintiff's allegations of limitations resulting from his impairments are credible, the evidence is equivocal and does not

13

require that finding.  The record evidence supports the ALJ's credibility finding, and giving that finding the deference it is due, the court does not find error.

Plaintiff's claim of error in the step five determination is based on his allegations of error in evaluating Dr. Willhite's opinion and in the credibility determination.  Having found no error in Plaintiff's other allegations, the court finds no step five error.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated this 26th  day of July 2016, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**

14